# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RANDALL LEE CONRAD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:07CV313 |
| | ) | 1:04CR297-1 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner Randall Lee Conrad, a federal prisoner, has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Docket No. 80.)[1] Petitioner was indicted on an eight-count indictment charging him with one count of conspiracy to distribute cocaine base in violation of 21 U.S.C. § 841, two counts of maintaining a place to manufacture and distribute cocaine base in violation of 21 U.S.C. § 856, one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 924, one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922 and 924, and three counts of possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841. (Docket No. 38.) Petitioner went to trial and was convicted by a jury on all counts. (Docket No. 53.) He was sentenced to seven concurrent 240-month prison sentences and a consecutive 60-month prison sentence. (Docket No. 63.)

---

[1] This and all further cites to the record are to the criminal case.

Following his trial and sentencing, Petitioner unsuccessfully pursued a direct appeal. (Docket Nos. 78, 79.) He then filed his current motion under section 2255. Respondent has filed a response (Docket No. 82), Petitioner has filed a reply (Docket No. 84), and this matter is now before the court for a decision.

## DISCUSSION

In his motion, Petitioner raises a single claim, containing several sub-claims, which alleges that his attorney provided him with ineffective assistance of counsel. In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing a habeas petitioner must come forward with some evidence that the claim might have merit), *abrog'n on other grounds recog'd, Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. See *Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). To establish prejudice, Petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Petitioner first alleges that his federal trial attorney failed to contact, or at least only contacted shortly before trial, four attorneys who had represented Petitioner on related state charges: John Gehring, Micheal Bruce, James Dilinger, and Michael Grace. The state and federal charges stemmed from searches of residences where Petitioner was present: One was in Forsyth County and the other in Stokes County. Petitioner believes that, had his federal attorney contacted these other lawyers in a proper fashion, he would have been able to file a motion to suppress based on a lack of probable cause for the search warrant used in the Forsyth County search and he would have been able to file a motion based on "confusion of the evidence" as to the Stokes County search. (Docket No. 80 Att. A. at 1.)

The allegations set out in Petitioner's complaint regarding his prior attorneys are quite conclusory. He never makes clear exactly what he believes that Gehring, Bruce, and Dilinger could or would have testified to that would have helped his case. Regarding Grace, Petitioner does state that he could have given copies of the search warrant used the Forsyth County search so that his federal trial counsel could have evaluated the warrant for probable cause. In his reply brief, he adds that he would have wanted Gehring and Bruce to testify that some of the drugs recovered in the Stokes County search were recovered from the septic tank and were weighed along with other drugs found in the residence. Petitioner believes this would have supported his "confusion of the evidence" theory.

Petitioner's claims fail both for a lack of evidence and because they are at odds with the evidence already in the record. Petitioner theorizes that there may not have been probable cause for the search in Forsyth County; however, he supports this theory with no evidence and no specific argument. It is also soundly rebutted by the evidence presented during his trial. At Petitioner's trial, Deputy Mark Elliot, the officer who obtained the warrant, was questioned thoroughly about why he did so. He testified that on August 12, 2003, he responded to a call at a hospital where a woman identified as Misti Neal was being treated for injuries to her head and neck. She told him she had been assaulted by a male acquaintance named "Randy" in a trailer in Rural Hall. (Docket No. 66 at 30.) She said that she and her girlfriend, Trinity Weston, went to Randy's trailer to purchase drugs, that they did not have money for the drugs, and that Randy and Weston agreed to trade sex for the drugs. At some point, there was an altercation between Randy and Neal in which he beat and "pistol-whipped" her with a revolver. (*Id.* at 30, 33-34.)

Neal and Weston were able to describe the exact location of the trailer, which had the address of 210 Lee Street. (*Id.* at 34.) Using that address and the names Randy and Randall, officers were able to discover that Petitioner had an address of 215 Lee Street. They then placed his photo into a lineup. (*Id.* at 35.) Neal and Weston picked Petitioner's photo from the lineup as the person who had assaulted Neal with a firearm, which they described as a revolver with a white handle. (*Id.* at 36-37.) Officers also knew of Petitioner's criminal history, which included felony

convictions. At that point, Deputy Elliot obtained a search warrant for 210 Lee Street. (*Id.* at 37.) Petitioner, a gun matching the description given by Neal and Weston, and a quantity of crack cocaine and marijuana were located in that trailer. (*Id.* at 43-46, 94.)

At the time Deputy Elliot got the search warrant, he had two witnesses, one injured, stating that Petitioner had committed drug crimes and an assault inside 210 Lee Street. They also stated that Petitioner possessed a firearm and Elliot knew that he was a convicted felon. To be sure, probable cause existed to search 210 Lee Street for evidence of a number of crimes. Petitioner has not, and cannot, put forward a plausible theory that there was no probable cause for the Forsyth County search warrant. His attorney, therefore, could not have failed to properly represent him either by not contacting Grace to get the warrant or by not challenging the search warrant in some other futile manner.

Petitioner's assertions as to Gehring and Bruce are similarly unavailing. Petitioner has produced no evidence that any of the drugs he was convicted of possessing in connection with the Stokes County search were recovered from the septic tank of the residence. That search was conducted in January 2004 after law enforcement conducted surveillance on a house Petitioner shared with Charles Hairston. On January 21, 2004, they watched the house for one and one-half hours and saw eight cars go to the house. On January 22, 2004, they watched for two hours and saw nine cars go to the house and only stay "a couple" of minutes. On

January 23, 2004, they saw ten cars in thirty-five minutes. (Docket No. 65 at 46.) They later obtained a search warrant for the residence and searched it on January 29, 2004. (*Id.* at 34.)

Petitioner and Hairston were in the house at the time of the Stokes County search. Petitioner was found lying in the doorway between his bathroom and bedroom. The toilet was flushing and one officer saw plastic bags going down. (*Id.* at 29-30.) A bag containing 5.9 grams of powder cocaine was seized from Petitioner's medicine cabinet, $1,473 was seized from Petitioner's mattress, his closet, and Hairston's person, and about 30 grams of crack cocaine was found in the kitchen. A small amount of drugs were also located on Hairston's person. (*Id.* at 39; Docket No. 66 at 26.) The officer testifying about these drug recoveries participated in the search and never mentioned searching the septic tank, recovering any drugs from the septic tank, or including those drugs in the amount of drugs seized from the house. Petitioner also failed to mention any search of the septic tank when he testified about the Stokes County search and the drugs in the house. (Docket No. 67 at 39-35, 46-47.) He disavowed knowledge of the crack cocaine allegedly recovered in the kitchen, but he did not claim that any of it came from the septic tank. (*Id.* at 46-47.)

Finally, Petitioner has presented no evidence from Gehring and Bruce that they would have testified that any of the drugs came from the septic tank. Petitioner does claim that an officer in a state court hearing testified about the drugs coming

-6-

Case 1:04-cr-00297-NCT   Document 85   Filed 10/10/07   Page 6 of 13

from the septic tank. He has submitted a letter from Gehring, however, stating that he has no independent recollection of the hearing other than the fact that some of Petitioner's family attended and that some of the charges were found to be without probable cause. (Docket No. 80 Ex. 1.) This testimony would not have aided Petitioner. Petitioner presents nothing showing what Bruce's testimony would have been.

Overall, Petitioner has nothing but his conclusory allegations, which are generally contradicted by the record, to support his claim that Gehring and Bruce could have testified favorably at his trial or in support of a pretrial motion. This effort is not sufficient to maintain his claim that his attorney erred by failing to properly interview them, failing to call them as witnesses, or failing to make a motion to suppress the Stokes County evidence based on "confusion of the evidence." These claims fail and should be denied.

Petitioner's next allegation of ineffective assistance is his claim that his attorney did not gather important background information. The indictment against Petitioner alleged that he had engaged in a conspiracy to distribute crack cocaine "[f]rom in or about February, 2003, up to and including January 29, 2004, the exact dates to the Grand Jurors unknown, in the Counties of Forsyth and Stokes." (Docket No. 38 at 1.) Petitioner claims that his attorney should have retrieved records from the North Carolina Department of Correction to show that he was not released from prison until March 20, 2003. He wanted this to be used to show that Respondent

was overreaching with the indictment and had no evidence of any dealing until August 12, 2003. He also believes that his attorney should have secured records showing that he attended school in the Forsyth County Work First Program at the times the house in Stokes County was under surveillance.

Both of these claims fail. Although the indictment certainly mentions February 2004, it is also quite clear that this was not the exact beginning date of the drug conspiracy and that the exact dates of the conspiracy were unknown. Establishing that Petitioner was in prison for the first month and a half of the eleven-month time period the conspiracy was alleged to have covered would have done nothing for his case given the ample testimony that he was dealing drugs during most of the alleged time period. Misti Neal testified that she had been buying crack from Petitioner two or three times a week for four months prior to August 2003. (Docket No. 66 at 59-60.) Trinity Weston testified that she had bought crack from Petitioner twenty times prior to the night he assaulted Neal. To be sure, there was evidence that Petitioner was selling crack cocaine by mid-April 2003. Challenging the first month or so of the admittedly unknown period set out in the indictment would have made no difference in the case. Petitioner was not prejudiced by any failure to obtain records showing his prison release date.

Petitioner was also not prejudiced by any failure to obtain his Work First records. Petitioner's attorney has submitted an affidavit along with Work First records that he did obtain. These records show only that Petitioner attended the

-8-

program for about five weeks in June and July 2003, before being referred to a social worker. (Docket No. 82 Ex. 2 Ex. C.) They do not, as he claims, show that he was attending during the days of January 21-23, 2004. Petitioner has submitted no additional or contrary records. The records that have been produced would have been of no use in showing that he was not dealing at the time officers were observing the house in Stokes County. For that matter, they affect very little of the time-period of the alleged conspiracy and prove nothing about Petitioner's whereabouts or activities at night or on weekends and holidays even during the five weeks they do cover. Petitioner has again failed to show any prejudice.

Petitioner's next claim is that his attorney was unprepared for trial and refused to ask the witnesses questions which were suggested by Petitioner. This claim is largely conclusory because Petitioner does not explain, beyond the allegations raised elsewhere, how his attorney was unprepared. He also fails to list most of the questions that he sought to have asked. There are, however, a few exceptions.

Petitioner believes that his attorney should have asked Deputy Elliot whether officers ever saw Petitioner sell drugs or whether they ever had an undercover officer or informant make a purchase from him. He also suggests that his attorney should have asked what evidence Elliot had that he was involved in drug trafficking before his August 2003 arrest. All of these questions would have been pointless or were already answered at trial. No claim was ever made that officers saw Petitioner sell any drugs or that Elliot ever used an undercover officer or informant to buy from

him.  As for evidence that Petitioner sold drugs prior to August 2003, the testimony of Neal and Weston was the evidence on this point.

Petitioner also believes that his attorney should have asked the Stokes County officers about drugs recovered from the septic tank and whether Petitioner was actually seen flushing those drugs.  Again, there is no evidence suggesting that the septic tank was ever searched, that drugs were recovered, or that Petitioner was charged with such drugs in this court.  Any questions such as these would have been irrelevant.

Petitioner next complains that the trial judge had to stop his trial because he was arguing with his attorney.  It is true that an incident similar to this did occur. (Docket No. 65 at 23.)  Following the testimony of Mickey Johnson, the trial judge did stop the trial and ask whether Petitioner's attorney wished to put anything on the record.  At a recorded bench conference, the attorney noted that Petitioner wanted him to ask Johnson a couple of questions and that the questions had been answered already by Johnson.  The trial judge then sent the jury out of the courtroom and spoke with Petitioner.  Following this, Petitioner confirmed that he was now in agreement with his attorney.  (*Id.* at 25.)  A procedure was put into place to allow Petitioner to raise his hand after each witness finished testifying if he did not feel that all needed questions had been asked.  His attorney also assured the trial judge that he would continue to consult with Petitioner in any event before excusing a witness. (*Id.* at 26.)  Whatever difficulties existed were obviously worked out to everyone's

satisfaction. Petitioner cannot use this episode to support a claim of ineffective assistance.

Petitioner's next allegation of ineffective assistance is that his attorney improperly failed to object when witness Samuel Speas was asked, "When would you radio in to [Petitioner]?" (Docket No. 66 at 101.) Petitioner's problem with this question stems from the fact that Speas had testified earlier that he never radioed directly in to Petitioner. (*Id.* at 98.) At first blush, there does appear to be a conflict between Speas earlier answer and the later question.[2] The conflict disappears when the initial answer is viewed in context. Speas testified that he worked as a lookout for Petitioner and that Petitioner paid him with money or crack cocaine. (*Id.* at 96.) He would hang around in the general area outside 210 Lee Street and use a radio or walkie-talkie to communicate if anyone approached. He explained that he did not radio directly to Petitioner, but instead radioed another person who "would take it from there." (*Id.* at 97-98.) Using this method, he screened ten to fifteen customers a day. (*Id.* at 101.)

Obviously, whether Speas radioed Petitioner directly or radioed another person who then communicated with Petitioner or facilitated the deal himself is of little importance to the overall case. The critical essence of the testimony is that Petitioner hired Speas and paid him with money and drugs to act as a lookout for his

---

[2] As will be explained, there actually is not a conflict. Even if there had been, it is not clear that an objection would have been the proper course of action, as opposed to delving into the matter on cross-examination.

-11-

cocaine dealing business at 210 Lee Street. The hair-splitting objection that Petitioner claims his attorney should have made would not have changed the overall nature of Speas' testimony. His attorney did not err by failing to make it and Petitioner was not prejudiced in any event.[3]

The next claim of any substance by Petitioner is that his attorney did not vigorously pursue a motion to dismiss the conspiracy charge at the end of Respondent's evidence. The attorney did make such a motion based on a lack of co-conspirators. The trial judge responded, "What about people who had walkie-talkies?" (Docket No. 65 at 56.) Counsel then conceded that these persons could be part of a conspiracy. The trial judge concluded that the issue was one for the jury and denied the motion at that time. (*Id.*) Petitioner argues that his attorney should not have simply conceded the point raised by the trial judge. Nevertheless, he does not point out any other course of action that could reasonably have been taken in light of the evidence. Speas had clearly testified that he and at least one other person were working in concert with Petitioner to run his crack cocaine operation at 210 Lee Street. Trinity Weston also tied these "watch-outs" to Petitioner and his drug dealing. (Docket No. 66 at 86-87.) Whatever other evidence existed, Speas testimony was, as the trial judge pointed out, sufficient to take the matter to the jury. No ineffective assistance occurred.

---

[3] It is also worth noting that, immediately after the question about radioing Petitioner, the prosecutor went back to saying that another person was radioed. (Docket No. 66 at 101.) Thus, it appears that the reference to Petitioner was a mistake that was quickly remedied even without any objection.

Finally, Petitioner makes a somewhat oblique statement that if his trial attorney thought his request for "motion hearings" was frivolous, he should have told Petitioner in writing and moved to withdraw from the case. Petitioner cites to the case of *United States v. Snipes*, 179 Fed. Appx. 878, (4th Cir. 2006). It is not clear what motions Petitioner is referring to, but *Snipes* has nothing to do with motions. Instead, *Snipes* states that, following the denial of a direct appeal in the Fourth Circuit, appointed appellate counsel is required to inform a defendant in writing of his right to file a petition for certiorari with the Untied States Supreme Court. If the defendant wishes to do so, but the attorney feels the petition would be frivolous, the attorney can move to withdraw. *Snipes*, 179 Fed. Appx. at 880. *Snipes* is simply not relevant to Petitioner's trial attorney or anything he did or did not do. Also, the trial attorney withdrew and was replaced on appeal. (Docket No. 73.) Petitioner fails to even state a recognizable claim on this point.

**IT IS THEREFORE RECOMMENDED** that Petitioner's motion to vacate, set aside or correct sentence (Docket No. 80) be **DENIED** and that Judgment be entered dismissing this action.

_____
Wallace W. Dixon
United States Magistrate Judge

Durham, N.C.
October 10, 2007